Cheves, J.
delivered the opinion of the Court.
At the Common Law, where the king’s tenant died without heirs, the king was taken to have the right immediately, and be in actual possession without office found. (Co. Litt. 2 b. Plowden, 229. 3 Johns. Ca. 109.) So w'here the heir was an alien, for not having inheritable blood, no descent could be cast upon him; he could not *456 take for a moment. It was otherwise in case of purchase by an alien. The law permitted him to take and hold, (Co. Litt. 1 Johns. Ca. 339,) until office found, and it was by the inquest that the king’s title was established. I have said that the cases where the escheat was caused by failure of heirs, the title of the king commenced at the death of the tenant, and the possession immediately followed the right. (Co. Litt. 2 b. Plowden 229. 3 Johns. Ca. 109.) But perhaps it would be too much to say that in no case, and for no purpose, an office would have been necessary in such cases. It was, however, sufficiently clear that this was the general rule. The doubt expressed by Lord Ellenborough, in Hayne v. Redfern, (12 East, 96,) was founded on the difficulty of ascertaining whether the king was the immediate lord; in other words, whether the person last seized was the king’s tenant ? Where mesne lordships were common, the presumption did not follow; and the fact did not appear, that the king was the immediate lord, unless that fact was proved by some matter of record. But it is unnecessary that we should be embarrassed by these distinctions or doubts. We are of opinion that in all cases in this state, the relation of the state is like that of the king to his immediate tenants. The king was entitled to the mesne profits from the time his title, not his actual possession, accrued. (3 Black. Com. p. 260.) In escheats for failure of heirs, this title, we have *457 seen, accrued immediately on the death of the tenant. The lord by escheat might distrain for rent due to the last tenant, because it was incident tp the reversion. (3 Cruise, 498. Tit. Escheat.) The king, then, in England would have been entitled to the mesne profits from the death of the tenant in a cáse like the present.
Our act of Assembly does not vary this right; it only establishes a mode in which the fact of the failure of heirs is to be ascertained. It is true it speaks of the land being vested by the .judgment of the Court, but this is only an inaccuracy of language, for the act of the Assembly no where enacts the law, but recognises the Common Law. It has been determined that the state cannot grant escheated lands until office found iinder the act, and very properly, for the- object' of the act is to avoid, any injustice to the citizen, and therefore the state forbears to exercise the right which the Common Law casts upon it, until that right is ascertained. In that respect it is analogous to the English statutes, which are the subject of construction in Hayne v. Redfern, (12 East, 96.) From these premises it follows that the City Council, who in this case possess all the rights of the state} are entitled to recover all the mesne profits from the death of the person who died siezed without heirs. The verdict, therefore, is right, and the recovery against this defendant works no hardship. He was fully apprised of the claims of the state, and indeed still retains in *458 hi® hands the full amount of the verdict, which does not charge him with the sums paid away on account of the debts of the intestate. But we are jje understood as giving no opinion, one way or the other, in a case where the person in actual possession, without notice of the claims of the state, may pay rents to an apparent proprietor, or where an agent, public or private, may receive the rents and profits, and pay them over without a knowledge of the rights of the state.
Prioleau and Drayton, for the motion.
Gadsden, contra.
The other Judges concurred.